# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIK A. AHLGREN, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company, | Civ. No. 19-303 (JRT/LIB) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| DIEDERIK MULLER a/k/a DIEKIE MULLER and DM SAFARIS, a/k/a DIEKIE MULLER HUNTING SAFARIS, | |
| Defendants. | |

Erik A. Ahlgren, **AHLGREN LAW OFFICE, PLLC,** 220 West Washington Avenue, Suite 105, Fergus Falls, MN  56537, for plaintiff.

Mark G. Schroeder, Adam G. Chandler, and Jason R. Asmus, **TAFT STETTINIUS & HOLLISTER LLP,** 80 South Eighth Street, Suite 2200, Minneapolis, MN, 55402, for defendants.

This case arises out of Jerry Hennessey's unauthorized use of funds from his prior employer, the Ashby Farmers Co-Operative Elevator Company (the "Co-Op").  From 2003–2018, Hennessey paid over $5 million of the Co-Op's funds to himself or directly to third parties for his personal benefit.  Among others, Hennessey paid Defendant DM Safaris, owned by Defendant Diederik Muller ("Muller"), with checks from the Co-Op to fund exotic hunting trips for himself and his wife.  Upon discovery of the fraud in 2018, the Co-Op ceased operations and appointed an Assignee, Plaintiff Erik Ahlgren, to pursue

1

claims and remedies on behalf of the Co-Op and its creditors.  Ahlgren brought this action in January 2019, seeking to void unauthorized payments to Defendants.

Presently before the Court is Defendants' Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the Court will deny Defendants' Motion to Dismiss under Rule 12(b)(2), grant in part and deny in part Defendants' Motion to Dismiss under Rule 12(b)(6), and will deny Ahlgren leave to amend.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The Co-Op is a grain farmers' cooperative based in Ashby, Minnesota.  (First. Am. Compl. ("FAC") ¶ 1, July 11, 2019, Docket No. 47.)  The Co-Op purchases grain from local farmers, who are also owners of the Co-Op, and sells it to grain markets.  (*Id.* ¶ 14.)

In 1989, the Co-Op hired Jerry Hennessey, a resident of Minnesota, as its general manager.  (*Id.* ¶ 14.)  Between June 2003 and September 2018, Hennessey received over $5.4 million in unauthorized funds from the Co-Op by writing checks from the Co-Op to himself and directly to third parties, including Defendants.  (*Id*. ¶¶ 15–17.)  Hennessey used the checks for personal bills, home improvement projects, property purchases, and domestic and international hunting trips unrelated to the business of the Co-Op.  (*Id.* ¶ 16.)  Hennessey disguised his fraud from the Co-Op by coding the checks as feed

purchases or other ordinary expenses.  (*Id.*)  All of the checks identified the Co-Op as the payor.  (*Id.* ¶ 18.)

Muller is a resident of South Africa and maintains an address in California.  (*Id.* ¶ 2; Decl. of Diederik J. Muller ("1ˢᵗ Muller Decl.") ¶ 2, Feb. 28, 2019, Docket No. 13.)  He owns and operates DM Safaris, which provides guided hunting services and accommodations in South Africa.  (1ˢᵗ Muller Decl. ¶ 3.)  DM Safaris is incorporated and headquartered in South Africa but maintains an office and bank account in California. (*Id.*; Decl. of Erik A. Ahlgren ("Ahlgren Decl.") ¶ 16, Ex. N at 152, Aug. 26, 2019, Docket No. 55.)[1]  DM Safaris is not licensed to do business in Minnesota, does not have property or agents in Minnesota, and does not maintain a bank account in Minnesota.  (1ˢᵗ Muller Decl. ¶ 5.)  DM Safaris operates a website and Facebook page that generally advertises its services to an international and United States audience.  (2ⁿᵈ Decl. of Diederik J. Muller ("2ⁿᵈ Muller Decl.") ¶ 2, Sept. 9, 2019, Docket No. 59.)

Muller met Hennessey for the first time in February 2012 at a Safari Club International ("SCI") hunting convention held in Nevada.  (FAC ¶ 21; First Muller Decl. ¶¶ 6–7.)  Hennessey wrote Muller an unauthorized check for $45,000 at the Nevada convention as down payment for a South African hunting trip later that year.  (FAC ¶ 21; Affidavit of Erik. A. Ahlgren ("Ahlgren Aff.") ¶ 4, Ex. 1 ("Hennessey Aff.") ¶ 13, May 30,

---

[1] Page numbers listed in the Ahlgren Declaration refer to the PDF pagination of the Declaration as a whole rather than the individual exhibit page numbers listed on each exhibit.

2019, Docket No. 33.)  Following the 2012 Nevada convention, Muller and Hennessy corresponded via telephone and email while Hennessey was in Minnesota to finalize details for the 2012 trip.  (Hennessey Aff. ¶ 12.)   Hennessey was responsible for making his own travel arrangements to and from South Africa.  (*Id.*)  Hennessey and his wife then flew to South Africa in May 2012 for the hunt.  (*Id.* ¶ 14.)  After the trip and while still in South Africa, Hennessey paid Muller for the animals he took and completed appropriate paperwork to have the animals shipped back to him in Minnesota.   (*Id.* ¶ 15.)

In 2013, Hennessey and Muller again met at the SCI convention in Nevada and, again, Hennessey wrote Muller and DM Safaris an unauthorized check—this time for $100,000—to pay for another South African hunting trip with DM Safaris.  (*Id.* ¶ 18.) Following the 2013 convention, Hennessey and Muller again corresponded by email and phone while Hennessey was in Minnesota to finalize details for the trip.  (*Id.* ¶ 19–20.) Like the first trip, Hennessey paid for the animals he took and completed paperwork for the animals to be shipped to Minnesota.  (*Id.* ¶ 20.)  A problem developed, however, when the skins of the animals taken never arrived in Minnesota.  (*Id.* ¶ 21.)

In 2014, Hennessey met with Muller at the SCI convention in Nevada to discuss the problem with the 2013 trip.  (*Id.* ¶ 22.)  Following the SCI convention, Muller returned to Minnesota with Hennessey and the pair spent three to four days ice fishing, snowmobiling, and discussing problems with the 2013 trip.  (*Id.*; Ahlgren Decl. ¶ 19, Ex. Q

at 202.)    After Muller left Minnesota, he refunded Hennessey $8,000 for the 2013 trip.

(Hennessey Aff. ¶ 23.)

In January 2015, prior to SCI Convention in Nevada, Muller called Hennessey from

South Africa and requested a $100,000 loan from Hennessey to purchase black impalas

for his business. [2]  (*Id.* ¶ 24; 2nd Muller Decl. ¶ 3.)  Muller promised  to repay the loan

within one year.  (Hennessey Aff. ¶ 24; 2nd Muller Decl. ¶ 3.)  Hennessey obliged and sent

Muller an unauthorized check for $100,000.  (Hennessey Aff. ¶ 24; 2nd Muller Decl. ¶ 3.)

Later that month, at the 2015 SCI convention in Nevada, Muller gave Hennessey a check

for $20,000 as an additional refund for the problems associated with the 2013 trip.

(Hennessey Aff. ¶ 24.)  The $100,000 loan has yet to be repaid.  (*Id.* ¶ 25.)

Hennessey's fraud was discovered in September 2018.  (*Id.* ¶ 35.)  By this time,

Hennessey had obtained a credit line of over $7 million for the Co-Op in his ongoing

efforts to conceal his fraud and cover the Co-Op's expenses.  (Ahlgren Decl. ¶ 4, Ex. C at

24–25.)  On February 14, 2019, Hennessey pleaded guilty to mail fraud and income tax

evasion.  (*Id.* at 23.)

As a result of Hennessey's fraud, the Co-Op was forced to close and has been

unable to pay its debts.  (Ahlgren Decl. ¶ 3, Ex. B at 13.)  In December 2018, the Co-Op

executed an assignment (the "Assignment") with Erik Ahlgren for the benefit of the Co-

---

[2] An impala is a "swift-running antelope." "Impala," *Encyclopedia Britannica* Online, https://www.britannica.com/animal/impala#ref1022159, (last accessed Dec. 19, 2019). A black impala "is a comparatively rare subspecies coveted by trophy hunters."  *Id.*

Op's creditors.  (*Id.*)  Pursuant to Minn. Stat. §§ 576-77, Ahlgren has committed to liquidating and administering the Co-Op's assets and may pursue any claim or remedy that could be asserted by the Co-Op or by a creditor of the Co-Op.  (FAC. ¶¶ 5–7.) According to reports filed with the Assignment, the Co-Op has forty-three creditors, most of which are based in Minnesota.  (Ahlgren Decl. ¶ 3, Ex. B at 20–21.)

## II.        PROCEDURAL BACKGROUND

Ahlgren originally brought this action in Grant County District Court on January 8, 2019, alleging three Counts: (I) actual fraud pursuant to the Minnesota Uniform Voidable Transactions Act ("MUVTA"), Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to MUVTA, Minn. Stat. §§ 513.45(a), 513.47; and (III) unjust enrichment.  (Notice of Removal ¶ 1, Ex. A at 7-8, 14-17, Feb. 8, 2019, Docket No. 1.)  Defendants removed the case to this Court on February 8, 2019.  (*Id.* at 1.)

On February 28, 2019, Defendants moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6).  (Mot. to Dismiss, Feb. 28, 2019, Docket No. 10.)  The Court allowed written discovery limited to personal jurisdiction before ruling on the motion to dismiss.  (Order on Stipulation, Mar. 22, 2019, Docket No. 19.)  On May 30, 2019, Ahlgren moved to amend the pleadings.  (Mot. to Alter Pleadings, May 30, 2019, Docket No. 30.)  The Court granted Ahlgren's motion and denied Defendants' motion to dismiss without prejudice.  (Order, June 21, 2019, Docket No. 44.)

On July 11, 2019, Ahlgren filed an amended complaint, which alleges four Counts: (I) actual fraud pursuant to the MUVTA, Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to the MUVTA, Minn. Stat. §§ 513.45(a), 513.47; (III) breach-of-contract; and (IV) unjust enrichment. (FAC ¶¶ 36–62.) Defendants now move again to dismiss under Rule 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim, respectively. (Mot. to Dismiss, Aug. 5, 2019, Docket No. 50.)

## DISCUSSION

### I. PERSONAL JURISDICTION

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003). "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH,* 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps,* 327 F.3d at 647. For purposes of a prima facie showing, the Court

must view the evidence in the light most favorable to the non-moving party. *Westley v. Mann,* 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

**B.    Due Process and Specific Personal Jurisdiction**

The Court may exercise personal jurisdiction over a defendant only if doing so (1) is consistent with the Minnesota's long-arm statute, Minn. Stat. § 543.19, and (2) comports with the Due Process Clause of the Fourteenth Amendment. *Pope*, 588 F. Supp. 2d at 1014–15. Because Minnesota's long-arm statue extends as far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [Defendants] is consistent with due process." *Id*. at 1015.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*,

340 F.3d 558, 562 (8th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Although personal jurisdiction can be general or specific, this case deals only with whether Defendants have sufficient minimum contacts to support specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotations omitted). In addition to establishing minimum contacts with the forum, for specific personal jurisdiction to be proper, the complained-of conduct must also arise out of the contacts that defendant creates with the forum state.[3] *Id.* at 284. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State" for jurisdiction to be proper. *Id.* at 285.

The Eighth Circuit considers five factors in making a personal jurisdiction determination:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state;
> (3) the relation of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

---

[3] "This is in contrast to 'general' or 'all purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile)." *Walden*, 571 U.S. at 283 n.6.

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted). "[T]he first two factors go primarily to whether minimum contacts exist," the third determines whether the action arises from the contacts, and the last two examine reasonableness. *Yellow Brick Road, LLC, v. Childs*, 36 F. Supp. 3d 855, 864 (D. Minn. 2014). The five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendants contacts with the forum State establish minimum contacts; (2) whether the litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state. *See* 13 Wright & Arthur R. Miller, Federal Practice and Procedure §1069 (4th ed.).

### C. Analysis

Ahlgren argues that Defendants' contacts, when viewed in totality, show that Muller and DM Safaris purposefully availed themselves of the privilege of conducting business in Minnesota and that the cause of action arises out of those contacts. The Court agrees with Ahlgren.

The quantity and quality of Defendants' contacts establish purposeful availment. *Pecoraro*, 340 F.3d at 562. Muller visited Minnesota in 2014 with the purpose, at least in part, of promoting DM Safaris. Muller acknowledges that business was discussed with Hennessey on the trip and that Muller issued a refund to Hennessey shortly thereafter. Subsequently, Muller solicited a $100,000 loan from Hennessey while Hennessey was in

Minnesota for DM Safaris and promised to pay Hennessey back within one year. Additionally, Muller and DM Safaris sent invoices, emails, and animal components to Hennessey in Minnesota. These contacts, considered alongside Muller's visit to Minnesota and his loan solicitation from Hennessey in Minnesota, show that Muller and DM Safaris "purposefully reached out" to Minnesota with the intention of garnering business in the State. *Walden*, 571 U.S. at 285 (cleaned up). The Court therefore finds Defendants have sufficient minimum contacts with Minnesota for the Court to exercise specific personal jurisdiction. Additionally, because this dispute arose from those contacts and centers around payments Hennessey made to Defendants, the Court finds a sufficient nexus between the dispute and Defendants' contacts with Minnesota.

Having found that sufficient minimum contacts and a nexus exist, "it is presumptively not unreasonable to require [a defendant] to submit to the burdens of litigation in the forum." *Burger King*, 471 U.S. at 476. DM Safaris and Muller have not presented any facts or law sufficient to rebut this presumption. Minnesota has a high interest in providing a forum in this matter as Ahlgren is a Minnesota resident and most of the creditors are located here. The inconvenience to Defendants would also not be so burdensome as to violate traditional notions of fair play and substantial justice.

Accordingly, the Court finds that Muller and DM Safaris are subject to specific personal jurisdiction in this case. The Court will deny Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II.    FAILURE TO STATE A CLAIM

### A.    Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

 "When considering a Rule 12(b)(6) motion, 'the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily

embraced by the pleadings.'"  *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Defendants seek dismissal of Count II for constructive fraud, Count III for breach-of-contract, and Count IV for unjust enrichment. Each is considered in turn below.

### B.     Count II: Constructive Fraud

"To cover the variety of situations in which debtors may attempt to place assets beyond the reach of creditors, [MUVTA] allows creditors to recover assets that a debtor transfers with fraudulent intent . . . as well as those transfers that the law treats as constructively fraudulent."  *Finn v. Alliance Bank*, 860 N.W.2d 638, 644 (Minn. 2015) (citing Minn. Stat. §§ 513.44(a), 513.45.)  "[C]onstructive fraud[] does not require proof of fraudulent intent."  *Id.* at 645.  Instead, "a claim for constructive fraud turns on a creditor's ability to show that the debtor made the transfer 'without receiving [a] reasonably equivalent value,' and that the debtor was insolvent, or the transfer made the debtor insolvent or unable to pay its debts."  *Id.* (quoting Minn. Stat. §§ 513.42, 513.44(a)(2), 513.45(a)).

Defendants first argue that Ahlgren has not sufficiently pleaded facts showing that the Co-Op failed to receive reasonably equivalent value in exchange for the payments made to Defendants.  The Court disagrees.  Like the allegations in the related case *Ahlgren v. Link*, Ahlgren's allegations "paint a detailed picture of the circumstances surrounding Hennessey's transfers" to Muller and DM Safaris.  No. 19-305 (JRT/LIB), 2019 WL 3574598,

13

at *6 (D. Minn. Aug. 6, 2019).  "Those allegations, taken as true, establish that Hennessey's payments to [Defendants] resulted in a transfer of the Co-Op's funds with no return of value to the Co-Op."  *Id.*

Defendants next argue that Ahlgren has not sufficiently pleaded facts showing that the Co-Op was insolvent at the time of the transfers or became insolvent as a result of the transfers.  The Court again disagrees.  It is true that Ahlgren must, at some point prior to trial, show that the Co-Op was either insolvent at the time of each transfer or became insolvent due to each transfer to Defendants.  *Finn*, 860 N.W.2d at 647–49 (discussing the "transfer-by-transfer" nature of the MUVTA and noting that "a debtor could have assets or legitimate business operations aside from the Ponzi scheme . . . that it uses to stave off insolvency, at least for a while").

However, insolvency is a factual question that "do[es] not need to be supported by the sort of detailed facts expected to be uncovered at discovery."  *In re: RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3451 (SRN/HB), 2017 WL 1483374, at *7 (D. Minn. Apr. 25, 2017).  At this stage of the proceeding, Ahlgren has met his burden.  As noted above, Ahlgren's complaint paints a detailed picture of the extensive, multimillion-dollar fraud that took place.  While Hennessey gave the last unauthorized check to Muller roughly three years prior to discovery of the fraud, the sheer magnitude of the fraud, coupled with the fact that Hennessey obtained a $7 million line of credit to keep the Co-Op's

creditors at bay,[4] establish plausibility that the Co-Op was insolvent at the time of the last transfer in 2015 or became insolvent as a result.

Accordingly, the Court finds Ahlgren has adequately pleaded a claim for constructive fraud and will deny Defendants' Motion to Dismiss Count II.

### C.    Count III: Breach-of-Contract

Muller and DM Safaris argue that Ahlgren does not have standing to assert a claim for breach-of-contract related to the $100,000 loan because the Co-Op was not a party to the contract between Hennessy and Muller.  Muller and DM Safaris argue that "under Minnesota law, strangers to a contract acquire no rights under the contract."  *Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 486 (Minn. Ct. App. 1987).

Ahlgren, however, is not a stranger.  Hennessey assigned all rights and interest he had in the loan to Ahlgren, the Assignee.  Under Minnesota law, "[a] contract to pay money may be assigned by the person to whom the money is payable, unless there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned."  *Wilkie v. Becker*, 128 N.W.2d 704, 707 (1964) (quoting 6 Am. Jur. (2d) Assignments, s 16).  Here, Muller and DM Safaris do not dispute a contract was formed, nor do they argue that the contract included an anti-assignment clause.  Therefore Ahlgren, standing in the shoes of Hennessey per Hennessey's assignment of

---

[4] The Court considers the Plea Agreement here because it is a public record and does not contradict the pleadings.  *See Smithrud*, 746 F.3d at 395.

the contract, has standing to pursue a breach-of-contract claim against Muller and DM Safaris.

Accordingly, the Court will deny Defendants' Motion to Dismiss Count III for breach-of-contract.

### D.    Count IV: Unjust Enrichment

Defendants seek dismissal of Count IV for unjust enrichment.  "[I]t is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law."  *Bartholomew v. Avalon Capital Group, Inc.*, 828 F. Supp. 2d 1019, 1030 (D. Minn. 2009) (quoting *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)).  Accordingly, a plaintiff "may not simultaneously maintain his claims for avoidance of transfers as fraudulent under statute, and his claims for monetary recovery under the equitable theory of unjust enrichment, as to the same transfers and on the same pleaded facts."  *In re Petters Co., Inc.*, 499 B.R. 342, 375 (Bankr. D. Minn. 2013).

Ahlgren pleads, on the same facts, both statutory claims under MUVTA and equitable claims for unjust enrichment.  The Court therefore finds that Ahlgren's claim in equity for unjust enrichment is precluded by his claim at law under MUVTA. *Bartholomew*, 828 F. Supp. 2d at 1030; *see also Ahlgren v. Link*, Civil No. 19-305, 2019 WL 3574598, at *6 (D. Minn. Aug. 6, 2019) (discussing and dismissing similar claims).

Accordingly, the Court will grant Defendants' Motion to Dismiss Count IV with prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 50] is **GRANTED** in part and **DENIED** in part as follows:

1. The Motion is **DENIED** as to Fed. R. Civ. P. 12(b)(2) as the Court has specific personal jurisdiction over Defendants;

2. The Motion is **DENIED** as to Fed. R. Civ. P. 12(b)(6) for Count II for constructive fraud and Count III for breach-of-contract; and .

3. The Motion is **GRANTED with prejudice** as to Fed. R. Civ. P. 12(b)(6) for Count IV for unjust enrichment.

DATED: February 10, 2020          _____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                        United States District Judge

17